130 Pa. Commonwealth Ct. 426 (1990)
568 A.2d 730
COMMONWEALTH of Pennsylvania, Petitioner,
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.
Commonwealth Court of Pennsylvania.
Argued November 17, 1989.
Decided January 2, 1990.
*427 Patricia J. Goldband, Asst. Counsel, Harrisburg, for petitioner.
Peter Lassi, with him, James L. Crawford and Lisa A. Essman, Harrisburg, for respondent.
Alaine S. Williams, Kirschner, Walters & Willig, Philadelphia, for intervenor, AFSCME-Council.
Before CRAIG and McGINLEY, JJ., and BARBIERI, Senior Judge.
CRAIG, Judge.
The Commonwealth of Pennsylvania appeals an order of the Pennsylvania Labor Relations Board (PLRB) affirming a determination by a hearing examiner that the Commonwealth committed an unfair labor practice, in violation of sections 1201(a)(1) and (5) of the Public Employe Relations Act (PERA),[1] when it contracted out laundry services. The hearing examiner issued a proposed decision and order recommending that the Commonwealth cease such practice *428 by rescinding the contract and reinstating the laundry work to bargaining unit employees. However, the PLRB revised the remedy and issued a final order that the Commonwealth cease the unfair practice by making a written offer to bargain over the decision to contract out.
The Commonwealth, through the Department of Public Welfare, operates the Ebensburg Center, a mental retardation facility. Council 13, American Federation of State, County and Municipal Employees (AFSCME) is the certified bargaining agent of the Commonwealth employees providing laundry services at Ebensburg.
On February 19, 1987, the Commonwealth notified AFSCME that laundry services at Ebensburg had been contracted out, effective as of March, 1987. The Commonwealth placed the bargaining unit employees assigned to the laundry service in other positions, but did not furlough any of them.
On March 10, 1987, AFSCME requested a meeting to negotiate concerning the contracting out, but the Commonwealth refused to bargain. On May 13, 1987, AFSCME filed an unfair labor practice charge with the PLRB, alleging that the Commonwealth's failure to bargain over contracting for laundry services violated sections 1201(a)(1), (3), (5), and (9) of the PERA. After a hearing on July 24, 1987, the hearing examiner concluded that the Commonwealth had violated sections 1201(a)(1) and (5) by failing to bargain over contracting for laundry services.
The Commonwealth filed exceptions with the PLRB, contending (1) that contracting alleviated the problem of Ebensburg's lack of program space, thus resulting in an increase in federal funding and an estimated savings to the Commonwealth in the amount of $774,741;[2] and (2) that the collective bargaining agreement establishes that the Commonwealth and AFSCME did bargain over the contracting of *429 laundry services. The PLRB rejected the exceptions, but did revise the remedy based on the fact that no employees were furloughed or terminated.
The Commonwealth now contends that the PLRB erred in concluding that the contracting for laundry services at Ebensburg was for economic reasons rather than for policy reasons, and was therefore a mandatory subject of bargaining. Alternatively, the Commonwealth asserts that it did not commit an unfair labor practice because the collective bargaining agreement between AFSCME and the Commonwealth establishes that the parties bargained over the issue of contracting out.
Our scope of review of a PLRB final order is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether the findings of fact are supported by substantial evidence. Harbaugh v. Pennsylvania Labor Relations Board, 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987).

1. Duty to Bargain
The first issue is whether a duty to bargain exists over contracting for laundry service work at Ebensburg.
Section 701 of the PERA, 43 P.S. § 1101.701, provides:
§ 1101.701. Matters subject to bargaining
Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.
Section 702 of the PERA, 43 P.S. § 1101.702, states:
§ 1101.702. Matters not subject to bargaining

*430 Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.
Because of the conflict present when a subject is of fundamental concern to the employees' interest in "wages, hours and other terms and conditions of employment" (section 701) and is also a matter of "inherent managerial policy" (section 702), the Pennsylvania Supreme Court established a balancing test for reconciling the situation:
It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.
Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 507, 337 A.2d 262, 268 (1975).
The Commonwealth contends that the managerial-policy aspect of this contracting outweighs the employees' interest because the contracting resulted in providing a more effective and efficient public service while avoiding any adverse impact on the employees, in that none were furloughed or lost any wages or benefits.
However, the use of a contractor to perform the identical laundry service work formerly performed by bargaining unit personnel indicates that the Commonwealth "did not change its basic policy goals, only the cost of attaining them." Pennsylvania Labor Relations Board v. Mars Area School District, 480 Pa. 295, 300, 389 A.2d 1073, 1075 (1978).
*431 Although the Commonwealth did not furlough or terminate any employees at Ebensburg, the contracting for laundry services affected the terms and conditions of employment because, as the board found, the employees "are no longer doing their former jobs and the unit lost work. Accordingly, there was a demonstrable impact on the employees."
The State College test mandates that we balance the interests of the employees against those of the employer. We agree with the board that the interest of the affected employees in retaining their former jobs outweighs the Commonwealth's interest in contracting for laundry services. Otherwise, the Commonwealth could unilaterally eliminate bargaining unit work by transferring work out of the unit. Therefore, the PLRB did not err in concluding that there is a duty to bargain over the contracting for laundry services at Ebensburg.

2. Waiver of Right to Demand Bargaining
The second issue is whether the collective bargaining agreement establishes that the Commonwealth and AFSCME had already bargained over the issue of out-contracting, thereby precluding the conclusion that the Commonwealth committed an unfair labor practice by failing to bargain over a mandatory subject.
The Commonwealth cites the following two provisions of the collective bargaining agreement as evidence that the parties bargained over the out-contracting issue:
Article 31 Furlough Periods
Section 1. The Employer acknowledges that its agencies should generally refrain from entering into new subcontracting agreements for services in an institution, district or local area during periods of time when the agency's permanent full-time employes in that institution, district or local area who normally perform that type of work are on furlough and eligible for recall. Unless precluded by an urgent need for the services, an agency will notify the Union prior to any variance from this policy and meet with the Union, upon request, to discuss the reason for *432 the proposed subcontract and recommendations by the Union for alternative methods of providing such services.
Article 37 Miscellaneous Provisions
Section 14. The Employer agrees that the reasons for a new sub-contracting agreement that will directly result in the furlough of employes will not be arbitrary or capricious.
Although these sections reveal that contracting out was a subject of bargaining, the PLRB did not view them as expressing any bargain to the effect that the Commonwealth had leave to contract for services in non-urgent situations without discussion of union-proposed alternatives.
Because the PLRB possesses administrative expertise in the area of public employee labor relations, the courts accord deference to the PLRB's assessment of the competing concerns relevant to the question of whether the conduct of an employer or union constitutes a refusal to meet the mutual obligation to bargain in good faith. Minersville Area School District v. Pennsylvania Labor Relations Board, 82 Pa. Commonwealth Ct. 506, 475 A.2d 962 (1984).
Therefore, the PLRB did not err in concluding that the Commonwealth and AFSCME have not bargained over the issue of out-contracting.
Accordingly, we affirm the decision of the PLRB.

ORDER
NOW, January 2, 1990, the order of the Pennsylvania Labor Relations Board, Case No. PERA-C-87-225-E, dated November 15, 1988, is affirmed.
NOTES
[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.1201(a)(1) and (5), which provide:

(a) Public employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
. . . .
(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative. (Footnote omitted).
[2] The dollar figure is based upon the value of the increase of available space, the difference in processing costs between the bargaining unit service and the contracted service, and the amount saved by not having to purchase new laundry equipment.