582 A.2d 79

**LAWRENCE COUNTY, Appellant,**

v.

**Alma L. BRENNER, Appellee.**

**LAWRENCE COUNTY, Appellant,**

v.

**Louis IOVANELLA, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1990.
Decided Oct. 26, 1990.

620

John W. Hodge, Sol. of Lawrence County, New Castle, for appellant.

Daniel I. Herman, Geer and Herman, New Castle, for appellees.

Robert L. Knupp, Knupp & Kodal, P.C., Harrisburg, for amicus curiae, Pennsylvania State Ass'n of County Com'rs. ·

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Lawrence County appeals from two decisions of the Court of Common Pleas of Lawrence County involving the County's decision to cease operation of Hill View Manor, an intermediate convalescent care facility. In an action brought by Louis Iovanella against the County, the trial court issued a declaratory judgment nullifying the County's decision to cease operating Hill View Manor. The trial court based its judgment on its finding that the manner in which the County Commissioners (Commissioners) decided to cease ownership and operation of the Hill View Manor violated The Sunshine Act.[1] The County also appeals the Lawrence County Court of Common Pleas' grant of an injunction, preventing the sale of Hill View Manor. The injunction was sought in a separate action for declaratory

1. The Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

judgment brought by Alma L. Brenner, a resident of Hill View Manor. Brenner's action did not allege a violation of The Sunshine Act, but instead alleged that the Commissioners abused their discretion by closing the facility and consequently caused her irreparable harm.

When negotiations over new collective bargaining agreements affecting the staff at Hill View Manor reached a stalemate, the Commissioners decided to disengage the County from operating the facility either by sale or closure. The Commissioners reached this decision while in an executive session convened during the collective bargaining session held on November 4, 1988 between the Commissioners and the Hill View Manor employees' bargaining representative. The stalemate arose when the Commissioners viewed as non-responsive a counter proposal from the Laborers District Council of Western Pennsylvania, Local 964 which represented the nursing home staff. Among the issues confronting the Commissioners during the collective bargaining negotiations were: the inability to attract and maintain a qualified staff of skilled employees; excessive abuse of sick leave; excessive overtime costs; increasing workmen's compensation insurance premiums; nursing scheduling difficulties and wage rate differentials; and the potential need for capital improvements to the facility.

The Commissioners issued a press release following the executive session, announcing that the nursing home would have to be either sold or closed because of their inability to secure an adequately qualified and skilled staff. At the next regularly scheduled meeting of the County Commissioners which was open to the public, the Commissioners unanimously adopted a resolution to close Hill View Manor, Resolution R–1988–396. The Commissioners adopted the resolution at their meeting on November 8, 1988, following public comment on the matter.

On June 6, 1989 at a regularly scheduled public meeting, the Commissioners reconsidered their decision to cease operating the nursing home and, following renewed debate on that issue, voted to close the facility. The vote which had

previously been unanimous changed to two votes in favor of closing and one vote against. The Commissioners were similarly aligned when on October 3, 1989, they voted to authorize negotiations for the sale of the nursing home with the two highest bidders for its purchase.

Pursuant to Section 15 of The Sunshine Act, 65 P.S. § 285, Louis Iovanella in January, 1989, filed an action seeking a preliminary injunction, enjoining the County from removing the residents of Hill View Manor. Iovanella alleged that the injunction was warranted because the County's decision to discontinue operating the nursing home had been made in a manner which violated The Sunshine Act. On January 25, 1989, the trial court granted the injunction pending final hearing on the validity of the Commissioners' decision. On September 25, 1989, the trial court found that the Commissioners' decision to cease operating Hill View Manor when concluded at the executive session violated The Sunshine Act and that the Commissioners' subsequent ratification of that decision in a public meeting did not cure the violation. In an opinion and order on December 5, 1989, the Common Pleas Court denied the County's motion for reconsideration and their exceptions to the declaratory judgment and the instant appeal followed.

Just prior to the trial court's adjudication in Iovanella's action, Alma L. Brenner filed a complaint in equity for declaratory judgment, seeking the invalidation of the Commissioners' resolution to terminate operation of the nursing home and their subsequent actions taken toward sale of the property and closure of the facility. Brenner alleged that the Commissioners' legislative actions had been arbitrary, reckless, capricious and a gross abuse of discretion. Brenner also petitioned that court for an injunction to enjoin the County from entering into any contract for the sale of the nursing home. The anticipated date for awarding a contract of sale for Hill View Manor was October 3rd. On October 2, 1989, the trial court declared the actions of the Commissioners invalid and granted the injunction. The trial court filed an opinion on November 15th, indicating that the

injunction was issued because no legitimate resolution authorizing the Commissioners to sell Hill View Manor was then effective given the Court's order of September 25th in the Iovanella matter invalidating the Commissioners' resolution of November 8, 1988 because of Sunshine Act violations.

The County in appealing the decision against it in the Iovanella matter, argues that the trial court erred in not finding the Iovanella action untimely. The County further asserts that the Commissioners' decision at the November 4th executive session was not violative of The Sunshine Act because the decision was related to the negotiation of a collective bargaining agreement and accordingly fell within the scope of conduct and transactions permissible at an executive session. Alternatively, the County submits that even if the Commissioners' decision on November 4th violated The Sunshine Act, their subsequent ratification of that decision at a public meeting on November 8, 1988 and their reconsideration of the matter at a public meeting on June 6, 1989 cured any prior Sunshine Act violation.

In appealing the injunction in the Brenner matter, the County contends that Brenner failed to show immediate and irreparable harm justifying the injunctive relief. The County also submits that the trial court erred in relying upon its decision in the Iovanella matter when determining whether the injunction should issue. Finally, the County argues that the trial court committed error when it failed to require Iovanella to post a bond and that because of this error, the court's decision in Iovanella is invalid and that its decision in Brenner is also invalid because of that decision's reliance in pertinent part upon the Iovanella decision.

The Appellees, Iovanella and Brenner, submit that the County waived its right to challenge the timeliness of the Iovanella action because the County failed to raise this affirmative defense as "new matter" pursuant to Pa.R.C.P. 1030. The Appellees aver that the actions of the Commissioners clearly fall within the purview of The Sunshine Act and that they constitute violations of the Act as found by

the trial court. The Appellees contend that no subsequent action by the Commissioners ever cured the purported violation because of its substantial nature.

As to the Brenner matter, Appellees defend the injunction by arguing that sufficient evidence exists demonstrating harm because of Brenner's circumstances as a resident who is receiving intermediate care at the nursing home, and because, should she be forced to leave, there are no local nursing homes with space available for her and no provisions have been made in any proposal for sale of the facility ensuring that residents can stay at the nursing home until permanently relocated. The Appellees defend as proper the trial court's reliance in the Brenner matter on the record in the Iovanella matter because of judicial economy and analogous situations where deference has been paid foreign judgments. The Appellees also defend both the absence of a bond initially in the Iovanella matter, noting that a bond in an injunction proceeding can be posted *nunc pro tunc*, and that the minimal amount of the bond posted in the Brenner matter was wholly discretionary with the trial court.

In directing our attention to the Iovanella matter, we note initially that this matter, as instituted pursuant to the provisions of The Sunshine Act, is a civil action invoking the equitable jurisdiction of the Common Pleas Court. Section 15 of The Sunshine Act, 65 P.S. § 285. Accordingly, the declaratory judgment rendered by the Common Pleas Court was an appropriate remedy founded upon a cause of action available to the complainant, Louis Iovanella. *Bracken v. Duquesne Electric and Manufacturing Co.*, 419 Pa. 493, 215 A.2d 623 (1966).

Because failure to have initiated this action within the statutory limitations in Section 13 of The Sunshine Act, 65 P.S. § 283 would bar jurisdiction by the Common Pleas Court over this matter and would compel us to nullify this action *ab initio*, we will first consider whether the Iovanella matter was timely instituted. We agree with and adopt the

interpretation of Section 13 offered by the trial court.[2] First, Section 13 of the Act provides that where a meeting is open to the public, legal challenges under The Sunshine Act must be filed within thirty days from the date of that meeting. Second, this section provides that where a meeting is not open to the public, legal challenges under The Sunshine Act must be brought within thirty days of the complainants discovery of the occurrence of an impropriety at that meeting which is actionable under the Act. And finally, this section provides a one year statute of repose for actions alleging violations of the Act at meetings not open to the public.

Because Iovanella instituted his action under The Sunshine Act, alleging improper official activity at a meeting which was not open to the public, he was obligated to bring the action within thirty days of his discovery of the alleged improprieties. Moreover, he could not bring the action any later than one year from the date of the non-public meeting at which the improprieties allegedly transpired. Consequently, since the executive session at which the Commissioners allegedly violated The Sunshine Act by deciding to close the county run nursing home was held on November 4, 1988, Iovanella was required to bring this action no later than a year later. Iovanella instituted his suit against the Commissioners on January 16, 1989 well before the repose against such an action would commence. Furthermore, since there is no evidence of record in support of the allegation that Iovanella filed his complaint beyond the thirty day statutory limitation from the date when he discovered the alleged impropriety, we cannot address whether his suit offends the statutory limitation. Accordingly we must conclude that Iovanella's action was timely because it

2. Section 13 of The Sunshine Act, 65 P.S. § 283, provides in pertinent part:

> A legal challenge under this act shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which the act was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting.

was filed before the statutory repose against such an action commenced.[3]

In reviewing the declaratory judgment that the decision of the County Commissioners to close Hill View Manor constituted a Sunshine Act violation, we find that we must disagree with that judgment. The Sunshine Act requires that official actions and deliberations take place at meetings open to the public with limited exceptions. Section 4 of The Sunshine Act, 65 P.S. § 274. Among the exceptions are meetings held in executive session, Section 7 of the Act, 65 P.S. § 277, in other words, those meetings from which the public is excluded other than those persons whose presence is needed in order to carry out the purpose of the meeting. Section 2 of the Act, 65 P.S. § 272. Executive sessions are limited in their exemption from Sunshine Act compliance according to the purposes for which they are convened. Among the purposes exempted are labor negotiations. Section 8 of the Act, 65 P.S. § 278(a)(2). This section provides:

(a) *Purpose*—An agency may hold an executive session for one or more of the following reasons:

\* \* \* \* \* \*

(2) to hold information, strategy and negotiation sessions related to the negotiation or arbitration of a collective bargaining agreement, or in the absence of a collective bargaining unit, related to labor relations and arbitration.

The trial court determined that the Commissioners' decision to close and sell Hill View Manor reached at the executive session on November 4, 1988 was not related to the negotiations for which that meeting was convened, and having determined that the Commissioners' decision was not related to those negotiations, the trial court found that the decision did not come within any official action excepted from Sunshine Act compliance. While the trial court's analysis with respect to the relationship between the Commissioners' decision and the negotiations over a collective

---

3. The issue of timeliness was not raised in Brenner.

bargaining agreement with the staff at the nursing home is framed in the context of evaluating whether the decision to close the facility is "agency business," we believe that court's conclusion is incorrect that such a decision represents policy-making which comes within the definition of "agency business" under Section 3 of the Act, 65 P.S. § 273, for which there is no exception from compliance with the Act.

In *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), our Supreme Court, when interpreting the scope of the provisions of The Public Employee Relations Act, Act of July 23, 1970, P.L. 563, determined that, given the legislature's ultimate intent to ensure the effective and efficient operation of public employment, items of dispute which are matters of fundamental concern to employee interests in wages, hours and other terms and conditions of employment are matters subject to good faith bargaining even though they may touch upon managerial policy. *Id.* at 507, 337 A.2d at 267–268. Although the Public Employees Relations Act as then enacted sought to further this public interest it does not vitiate the state's managerial prerogative.[4]

In the Supreme Court's affirmance of this Court's decision in *Borough of Wilkinsburg v. Sanitation Department of the Borough of Wilkinsburg*, 16 Pa. Commonwealth Ct, 640, 330 A.2d 306 (1975), 463 Pa. 521, 345 A.2d 641 (1975), the Supreme Court indicated that the contracting out of work originally done by employees covered by a collective bargaining agreement requires no less than an opportunity

**4.** Section 702 of Public Employee Relations Act provides:

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives."

for the employees' bargaining representative "to meet and confer" with the public sector employer even though the decision to contract out for the work may be a managerial prerogative and inherently a matter of policy. *See also: Commonwealth (Ebensburg Center) v. Pennsylvania Labor Relations Board,* 130 Pa. Commonwealth Ct. 426, 568 A.2d 730 (1990); *Commonwealth (Polk Center) v. Pennsylvania Labor Relations Board,* 125 Pa.Commonwealth Ct. 114, 557 A.2d 1112 (1989); *Midland Borough School District v. Pennsylvania Labor Relations Board,* 126 Pa.Commonwealth Ct. 537, 560 A.2d 303 (1989).

Because contracting out results in termination of a work unit's operations just as much as the cessation of the service or function which a work unit provides may result in the unit's elimination, we believe that decisions which effect such termination are equally immediate in their affect upon the interest of public employees so as to obligate a public sector employer to negotiate with a bargaining unit pursuant to the Public Employee Relations Act. Consequently, we believe that we must similarly find that the closing of Hill View Manor either by simply ceasing operation or by selling the facility (whether as a going concern or not), is a matter which affects the interest of the staff there so as to obligate the Commissioners to discuss the matter in its negotiations with the staff's bargaining representative. Perforce then, we must likewise find that a decision to close the nursing home is related to the negotiating process which accordingly comes within the purview of the executive session exemption to Sunshine Act compliance.

 In view of our conclusion, we must reverse the declaratory judgment. We proceed to comment that even had we not found the decision to close the nursing home related to the labor negotiations for which the executive session was convened, we would have to find that, short of fraud in reaching that decision at the executive session, most any Sunshine Act infraction could have been cured by subsequent ratification at a public meeting. *Bianco v. Robinson Township,* 125 Pa.Commonwealth Ct. 59, 556

A.2d 993 (1989). Otherwise, governmental action in an area would be gridlocked with no possible way of being cured once a Sunshine Act violation was found to have occurred. Therefore, the Commissioners adoption of a resolution to close the nursing home following public comment during their regularly scheduled public meeting on November 8, 1988 cured the purported infraction here in issue.

Under The Sunshine Act, a court may enjoin any challenged official action until a judicial determination is reached as to the legality of the meeting at which the action was adopted. Section 13 of The Sunshine Act, 65 P.S. § 283. Pursuant to this provision, the trial court on January 25, 1989, enjoined the County from removing the residents of Hill View Manor until its determination of whether the Commissioners' November 4, 1988 decision, while in executive session, to close the nursing home, was valid. In issuing the temporary injunction the trial court did not require security from Iovanella. Yet, because the proceedings in the action brought by Iovanella must comport with the Rules of Civil Procedure, the trial court was obligated to adhere to the provisions of Pa.R.C.P. 1531. Failure to post a bond when either special relief or a preliminary injunction is being sought nullifies both the injunction and any disposition in the pending matter. *Rosenzweig v. Factor*, 457 Pa. 492, 327 A.2d 36 (1974). Accordingly, we must also reverse the decree because it is defective without the requisite bond.

In turning to the Brenner matter, we first find that Brenner's declaratory judgment action is both a proper and available means of resolving the validity of the County's decision to close Hill View Manor. *Mid–Centre County Authority v. Boggs Township*, 34 Pa.Commonwealth Ct. 494, 384 A.2d 1008 (1978); *see* 42 Pa.C.S. § 7532. Addressing the substance of the judgment, we note that our having reversed the trial court in the Iovanella matter, on which the Brenner judgment relied, necessarily undercuts that judgment. Thus, we reverse the judgment and issuance of the injunction by the trial court in the Brenner matter.

Having concluded that the disposition of the Brenner matter must be reversed, we need not address whether the security defect in the Iovanella matter similarly flaws the Brenner matter.

## ORDER

AND NOW, this 26th day of October, 1990, the declaratory judgment and injunction order of the Lawrence County Court of Common Pleas in the above-captioned matter docketed in that Court at No. 168 of 1989 is hereby reversed. The decree and order denying reconsideration and exceptions to the decree in the above-captioned matter docketed at No. 11 of 1989 in the Lawrence County Court of Common Pleas are hereby reversed.