Linda SOVICH; Kenneth E. Marcel; Bradford J. Silk, Jr.; Margaret Anne Silk; Nancy Martin; Thomas Marroni; John Marroni; Roger A. Nanni; Edward Kuyweski; Edward Jasinski; Arthur Holman; Richard Safranek; John C. Spagnoli; John D. Hoffman

v.

James F. SHAUGHNESSY, Robert E. Batina, Robert M. Kusnirak and Michael Melnyk.

Appeal of Linda SOVICH; Bradford J. Silk, Jr.; Margaret Anne Silk; Nancy Martin; Roger A. Nanni; Edward Kuyweski; Edward Jasinski; Arthur Holman and Richard Safranek, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.

Decided Jan. 6, 1998.

Thomas J. Michael, Pittsburgh, for appellants.

John A. Knorr, Pittsburgh, for appellees.

Before COLINS, President Judge, and FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Linda Sovich (Sovich), Bradford J. Silk, Jr., Margaret Anne Silk, Nancy Martin, Rog-er A. Nanni (Nanni), Edward Kuyweski, Edward Jasinski, Arthur Holman and Richard Safranek (collectively, Residents)[1] appeal from an order of the Court of Common Pleas of Allegheny County (trial court), dated December 9, 1996, granting the motion for summary judgment of James F. Shaughnessy (Shaughnessy), Robert E. Batina, Robert M. Kusnirak and Michael Melnyk (collectively, Council)[2] on all counts of Residents' complaint alleging violations of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286 (Sunshine Act).[3] We affirm.

On June 16, 1994, Council held its regular, advertised monthly meeting in its chambers located in the Leetsdale Borough (Borough) building. The chambers had a maximum occupancy limit of 45 persons, with seating provided for this number of people. Prior to the meeting and in accordance with the issued public notice, Shaughnessy, Council President, stated that 11 of the 45 seats would be reserved for Council members and Borough officials and that the remaining 34 seats would be available to the public. Shaughnessy specifically indicated that, because of the occupancy limit, any member of the public who attended the meeting but did not have a seat in the meeting room would be asked to leave, or be removed from, the room.

Seeing several persons without seats, Shaughnessy directed their removal from the meeting room. Thereafter, Council suspended the regular meeting to discuss whether to adjourn and reschedule the meeting in order to accommodate the excluded members of the public. Following the discussion, Council reconvened the meeting and, after entertaining a motion, voted to adjourn the meeting until June 23, 1994.

When the meeting reconvened in Council's meeting room on June 23, 1994, 34 seats still remained reserved for the public. However, Council accommodated the excess members of the public by transmitting the meeting, via microphone, to an adjacent garage equipped with a loudspeaker and chairs. To give re-

---

1. Residents all reside in Leetsdale Borough.

2. Council consists of elected members of Leetsdale Borough.

3. The Sunshine Act repealed and substantively replaced the Open Meeting Law, Act of July 19, 1974, P.L. 486, *formerly* 65 P.S. §§ 261–269.

marks or pose questions to Council during the audience participation segment of the meeting, the separated members of the public would leave the overflow facility, enter the meeting room and secure permission from Council to use the microphone located in front of Council's table.

Dissatisfied with this arrangement, on July 14, 1994, Residents filed a three count complaint in the trial court alleging violations of the Sunshine Act, the purpose of which is to ensure the public's right to witness the decision-making processes of agencies and thereby enable the public to effectively fulfill its role in a democratic society.[4] In their complaint, Residents allege that Council 1) improperly closed the June 16, 1994 meeting, 2) impermissibly discussed during "executive session" whether to adjourn the June 16, 1994 meeting, and 3) failed to provide a reasonable accommodation to afford participation in the June 23, 1994 meeting. Following discovery, Council filed a motion for summary judgment, which was granted by the trial court. Residents now appeal from that grant to this court.

Initially, we note that our supreme court has set forth the principles governing the grant or denial of a motion for summary judgment as follows:

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of summary judgment may ,be granted only in cases where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of material fact. The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Rule 1035 also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.* If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d) (Emphasis added). Therefore, where a motion for summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial.

*Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991) (citations omitted). As to our scope of review, we will overturn the entry of summary judgment by the trial court only if there has been an error of law or an abuse of discretion. *Wilson v. Ridgway Area School District,* 141 Pa.Cmwlth. 607, 596 A.2d 1161 (1991), *appeal denied,* 530 Pa. 650, 607 A.2d 258 (1992). With these basic principles in mind, we now review the matter before us.

Residents first argue that the trial court erroneously granted summary judgment because Council impermissibly closed the June 16, 1994 meeting in violation of section 10.1

---

4. The legislative purpose behind the Sunshine Act is set forth in section 2, which provides:

    (a) **Findings.**-The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

    (b) **Declarations.**-The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act.

65 P.S. § 272. We are cognizant of the fact that under section 3 of the Statutory Construction Act, 1 Pa.C.S. § 1921(a), we must interpret and construe statutes "to ascertain and effectuate the intention of the General Assembly," and that "[e]very statute shall be construed, if possible, to give effect to all its provisions."

of the Sunshine Act, 65 P.S. § 280.1, which provides that "the board or council of a political subdivision ... shall provide a reasonable opportunity at each advertised regular meeting ... for residents of the political subdivision ... to comment on matters of concern, official action or deliberation which are or may be before the board or council." On the other hand, Council maintains that summary judgment was properly granted because Council provided a reasonable opportunity for the public to participate in the June 16, 1994 Council meeting. We agree with Council's contention.

■ In the first count of their complaint, Residents assert that Council President Shaughnessy violated this provision because he "caused the Leetsdale Building Inspector to limit occupancy of [C]ouncil's chambers to forty five (45) people." (R.R. at a10.) However, Residents failed to draw a nexus between this number limitation and any violation of section 10.1 of the Sunshine Act. Indeed, the facts indicate that Residents were not deprived of an opportunity to participate in the Borough Council meeting of June 16, 1994.

Resident Roger Nanni (Nanni), a past Council President, stated that more than 34 seats were available to the public at the June 16, 1994 meeting, and, because only about a half dozen people generally attended Council meetings, the provided seating could accommodate more than six times the usual number of people at Council meetings. (R.R. at a65–a68.) Moreover, when even this number of seats proved insufficient and members of the public were excluded from the meeting, Council immediately entertained a motion to adjourn, prior to conducting *any* business, in order to avoid holding a meeting in violation

of the Sunshine Act. Thus, because Council did not deprive Residents of a reasonable opportunity to participate in the June 16, 1994 Council meeting, the trial court did not err in granting summary judgment in favor of Council on the first count of Residents' complaint.

■ In the second count of their complaint, Residents allege that Council held an impermissible "executive session" on June 16, 1994, in violation of section 8 of the Sunshine Act,[5] to discuss whether to adjourn the general Council meeting and reconvene at a later date. Residents argue that the trial court erred in determining that Council was permitted to suspend the regular meeting for this purpose. We disagree.

■ The Sunshine Act requires that official *actions* and deliberations take place at meetings open to the public. Section 4 of the Sunshine Act, 65 P.S. § 274.[6] In *Conners v. West Greene School District*, 131 Pa.Cmwlth. 95, 569 A.2d 978 (1989), *appeal denied*, 525 Pa. 649, 581 A.2d 574 (1990), we addressed a situation where a taxpayer alleged a violation of the Sunshine Act when school district board members privately discussed, during a recess from the open board meeting, the adoption of the school district's budget. We held that while the taxpayer pled insufficient facts to permit such an action to continue, even if the school district board met in private to discuss the budget, this would not constitute a violation of the law. Specifically, we stated that "there is a substantial difference between discussion and deliberation. A ... board member is not foreclosed by the [Sunshine] Act from discussing and debating informally with others ... the pros and cons of particular proposals and matters...." *Id.* at 983. Therefore, the Sunshine Act does

5. Section 8(a) of the Sunshine Act, 65 P.S. § 278(a), lists those reasons for when an agency is permitted to hold an executive session, and provides:
(a) **Purpose.**-An agency may hold an executive session for one or more of the following reasons:
(4) To consult with its attorney ... regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed.
Residents contend that because this list does not include discussions regarding whether to adjourn

a public meeting, Council's private discussion violates this Sunshine Act provision.

6. The open meeting provision found in section 4 of the Sunshine Act, 65 P.S. § 274 (emphasis added), provides that "[o]fficial *action* and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section[s 277 (exceptions to open meetings), 278 (executive sections), and 282 (meetings of the General Assembly) ]".

not require agency members to inquire, question and learn about agency issues only at an open meeting. *See Conners.* Nevertheless, regardless of what is *discussed* by an agency in private, if the agency fails to return to the open meeting to vote on a course of official *action,* the agency has violated section 4 of the Sunshine Act. *Lawrence County v. Brenner,* 135 Pa.Cmwlth. 619, 582 A.2d 79 (1990), *appeal denied,* 527 Pa. 652, 593 A.2d 423 (1991); *Keenheel v. Pennsylvania Securities Commission,* 134 Pa.Cmwlth. 494, 579 A.2d 1358 (1990). That did not happen here.

Paragraph 45 of Residents' complaint alleges that Council suspended the meeting to *discuss* adjournment of the June 16, 1994 meeting. (R.R. at a14.) Presumably, the adjournment was contemplated in order to accommodate the excess, excluded members of the public. However, in paragraph 33 of their complaint, Residents admit that the official decision to adjourn was not made during the private meeting which they refer to as an "executive session;" rather, Council reconvened the meeting and entertained a motion on the matter, followed by a vote in the regular course of the meeting. (R.R. at a12.) Because Council's official *action,* or vote, occurred during the public meeting, Council's "executive session" to discuss the matter did not constitute a violation of the Sunshine Act. Thus, the trial court did not err in granting Council's motion for summary judgment on the second count of Residents' complaint.

■ Finally, Residents argue that the trial court erroneously granted summary judgment because, by placing a single speaker and chairs in an adjoining facility, Council failed to provide a reasonable accommodation to facilitate participation in the June 23, 1994 Council meeting. Again, we disagree.

Both parties refer to *Babac v. Pennsylvania Milk Marketing Board,* 531 Pa. 391, 613 A.2d 551 (1992), which involved a meeting of the Pennsylvania Milk Marketing Board "(Board)" where one member of the board was physically present in the meeting room, while the remaining two members participated via a conference telephone call. Protesting consumers objected to a vote by speakerphone, maintaining that the physical presence of the two absent board members was required at the meeting. Although this court agreed, our supreme court reversed, holding that participation in a vote via a speakerphone conference call to deliberate agency business did not violate the open meeting provision of the Sunshine Act. In making this determination, our supreme court distinguished the situation of absentee board members participating in agency business from that of absentee members of the public, stating that

> [t]he statute merely gives the public the right to witness the deliberation, policy formation and decisionmaking of agencies. In other words, the statute gives the public the right to be present to personally observe the deliberation, policy formation and decisionmaking of agencies. It does not mandate that Board members be physically present at such meetings.

*Babac,* 531 Pa. at 395 n. 4, 613 A.2d at 553 n. 4.

Here, Residents maintain that the microphone and speaker were inadequate, that extraneous noise made it difficult to hear Council's proceedings and that the people in the overflow facility repeatedly asked Council members to speak louder and more clearly into the microphone. (R.R. at a182–a185.) Despite these difficulties, we do not believe that Residents' assertions constitute a violation of the Sunshine Act. *Babac* merely interpreted the Sunshine Act to afford the public "the right to be present and personally observe the agency." *See Babac.* Residents here were provided with more than this right as they were given an opportunity to participate in the meeting; they could hear the proceedings in the adjacent room via the speaker system, they could see the Council members through the doorway, and they could directly address Council by approaching the microphone at the podium.[7] There-

---

7. Sovich testified that the overflow facility was not only adjacent to Council's meeting room, but was connected to the room via a common doorway, and although the view of Council members was hampered due to the narrow doorway between the two rooms, the members of the public in the adjacent room could see into the meeting

fore, the trial court did not err by granting Council's motion for summary judgment on the third count of Residents' complaint.

Accordingly, for the foregoing reasons, we affirm.

## ORDER

AND NOW, this 6th day of January 1998, the order of the Allegheny County Court of Common Pleas, dated December 9, 1996, at No. 94–11391, is hereby affirmed.

room despite the partial obstruction. (R.R. at      a74.)