650 A.2d 1157

**James D. McNAUGHTON, Appellant,**

v.

**CIVIL SERVICE COMMISSION OF the BOROUGH OF CAMP HILL, and the Borough of Camp Hill.**

Commonwealth Court of Pennsylvania.

Argued Sept. 22, 1994.

Decided Nov. 18, 1994.

Petition for Allowance of Appeal Denied May 5, 1995.

396

P. Richard Wagner, for appellant.

Charles J. Hartwell, for appellees.

Before COLINS, President Judge, FRIEDMAN, J., and KELTON, Senior Judge.

COLINS, President Judge.

Officer James D. McNaughton (McNaughton) appeals an order of the Court of Common Pleas of Cumberland County (Common Pleas) dismissing his appeal of a decision of the Civil Service Commission of the Borough of Camp Hill (Commission). For the reasons set forth herein, we affirm.

The facts in this case are summarized as follows. McNaughton was employed by the Borough of Camp Hill Police Department (Department) on January 8, 1992, when his issued weapon and seventeen rounds of ammunition were stolen from his personal wall locker at the Camp Hill Police Station (station). The locker was not secured by a lock. On January 17, 1992, Stephen M. Urban, Mayor of the Borough of Camp Hill (Mayor), issued a letter informing McNaughton that his conduct violated Camp Hill Borough Police Department General Orders—Rules and Regulations—Number 29 of 66 (Rule 29),[1] that he was being suspended for three days

---

1. Rule 29 states:

   *Camp Hill Borough Police Officers shall*

   . . . .

   29) be responsible for any and all departmental property assigned and/or used by them, improper care of departmental property will not be tolerated. Property damaged through negligence may subject the officer responsible to disciplinary action and/or a reimbursement charge.

without pay, and had to reimburse the Borough for the loss of stolen property. Consequently, McNaughton served his suspension on January 18, 19 and 20, 1992, and issued the reimbursement check, under protest, payable to the Borough, on February 25, 1992.

McNaughton appealed the suspension imposed by the Mayor to the Commission. After a hearing on April 23, 1992, the Commission, by decision dated June 12, 1992, found it was unable to hear the case because the Borough of Camp Hill Council (Council) had not issued a decision on the matter. This decision was not appealed to Common Pleas. The Council later ratified the Mayor's suspension of McNaughton at its October 14, 1992 meeting.

McNaughton appealed his suspension to the Commission. The Commission, by stipulation of counsel, used the testimony and evidence from the April 23, 1992 hearing as the basis for its decision. Subsequently, on January 8, 1993, the Commission affirmed Council's ratification of the Mayor's suspension of McNaughton.

McNaughton appealed the Commission's decision to Common Pleas; no additional evidence was presented. Common Pleas dismissed the appeal, finding the Mayor had the power to suspend McNaughton for three days; that Council's failure to act on the suspension at its next regularly scheduled meeting did not render the suspension void; that Council had the authority to act on the suspension at a later date; and, that the Commission's decision was supported by the evidence and no abuse of discretion or error of law was committed. This appeal followed.

McNaughton presents four issues for this Court's review.[2] McNaughton contends Common Pleas erred in affirming the Commission's decision because: (1) the initial suspension by

2. In reviewing adjudications of municipal civil service commissions, this Court's scope of review "is limited to determining whether constitutional rights have been violated, an error of law has been committed or findings of fact necessary to support the adjudication are not supported by substantial evidence." *Lewis v. Civil Service Commission, City of Philadelphia*, 518 Pa. 170, 174, 542 A.2d 519, 522 (1988).

the Mayor was unlawful; (2) the evidence showed that McNaughton's actions with regard to securing his weapon were in compliance with the policies of the entire Department; (3) the Council's failure to act on the suspension at its next regularly scheduled meeting rendered the suspension null and void; and (4) the Commission applied an improper standard of review in conducting its hearing.

■  McNaughton's initial argument is based on an interpretation of The Borough Code (Code) [3] provision regarding a mayor's power to suspend police officers.[4]  It is McNaughton's position that the Code does not permit the Mayor to make a specific recommendation regarding the number of days of suspension, but merely allows the Mayor to suspend a police officer until the next meeting of the Council.

A similar issue was considered by this Court in *Moore v. Borough of Ridley Park*, 135 Pa.Commonwealth Ct. 555, 581 A.2d 711 (1990).  In *Moore*, the Court held that the "[m]ayor has an independent power to suspend [a police officer] for a period of ten days without any [c]ouncil action." *Id.* at 558, 581 A.2d at 712.  Based on this holding, McNaughton's first argument must fail.

■  Next, McNaughton argues that his actions were in accord with Department policy, thus, he should not be subject to discipline.  Specifically, McNaughton argues that his actions were in conformity with the Department's policy of keeping its arsenal of weapons behind closed, unlocked doors, and thus not equivalent to Rule 29's negligence requirement;

3.  Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

4.  Section 1124 of the Code states:
   In addition to the power of council to suspend policeman, the mayor may, for cause and without pay, suspend any policeman until the succeeding regular meeting of the council, at which time or thereafter the council may, subject to the civil service provisions of this act, if they be in effect at the time, suspend, discharge, reduce in rank or reinstate with pay, such policeman: Provided, however, That a policeman suspended by the mayor may not be reinstated by council at a date earlier than ten working days from the date fixed by the mayor for the suspension to commence....
   53 P.S. § 46124.

the Commission rejected this as an excuse for McNaughton's conduct.

The Borough counters by arguing that McNaughton admitted the violation of Rule 29 during the hearing before the Commission, and that there is substantial evidence in the record to support the disciplinary action.

In deciding issues of substantial evidence, "a reviewing court will examine, but not weigh the evidence since the factfinding tribunal is in a better position to find the facts based upon the testimony and the demeanor of the witnesses. The court may not substitute its judgment for that of the agency." *Civil Service Commission v. Poles*, 132 Pa.Commonwealth Ct. 593, 599, 573 A.2d 1169, 1172 (1990), *petition for allowance of appeal dismissed*, 530 Pa. 31, 606 A.2d 1169 (1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, [but must be] . . . more than a scintilla and must do more than create a suspicion of the existence of the fact to be established." *Lewis*, 518 Pa. at 175, 542 A.2d at 522 (citations omitted).

After review of the record, we determine that Common Pleas did not err as there is substantial evidence of record to support the Commission's determination that McNaughton violated Rule 29. At the proceeding before the Commission, testimony was presented regarding a booking policy and procedure within the Department, effective at the relevant time, which stated that lockers should be secured and locked. Further, there is testimony in the record that Corporal Thomas L. Olsen (Olsen), who created the booking policy and procedure, advised McNaughton approximately one year prior to the incident that McNaughton should lock his locker. While there is conflicting evidence contained in the record, resolving these conflicts is beyond our scope of review, and is a function better suited to the fact finder, in this instance, the Commission. *Poles; Gallagher v. Philadelphia Civil Service Commission*, 16 Pa.Commonwealth Ct. 279, 330 A.2d 287 (1974).

■ Next, McNaughton attacks the validity of the suspension, arguing that the Code required Council to act on the suspension imposed by the Mayor at its next regularly scheduled meeting, and because Council did not act until some ten months later, Council had no authority to act at all. In *Moore*, the Court held that "when the suspension is only for a three day period, [c]ouncil, has no authority to change that suspension. To require [c]ouncil to address an issue over which it has no authority to act would be absurd." *Moore* at 559, 581 A.2d at 713. Furthermore, Section 1124 of the Code states that the borough council may consider the suspension at its next regularly scheduled meeting, "or thereafter". 53 P.S. § 46124.

Therefore, the Council was not required to address the Mayor's suspension of McNaughton at its next regularly scheduled meeting. Further, the Council's action on October 14, 1992 was nothing but a ratification of the earlier imposed suspension, and not an additional suspension.

■ Lastly, McNaughton argues that the standard of review used by the Commission was improper because it was clearly not *de novo*, and placed a burden upon McNaughton to overcome the action of the Council. McNaughton is arguing that the Commission should have conducted a new proceeding and fashioned a penalty based on its own findings of fact.

In *Herrmann v. Civil Service Commission of Jenkintown*, 84 Pa.Commonwealth Ct. 211, 478 A.2d 961 (1984), this Court announced the standard of review to be used by a local civil service commission. In *Herrmann*, the Court held that, "[w]here the charges brought by the borough are found by the commission to be supported by the evidence, the penalty imposed is not otherwise prohibited, and the selection of the penalty is not arbitrary, discriminatory or an abuse of discretion, the commission may not modify the penalty." *Id.* at 215–216, 478 A.2d at 963. In the case *sub judice*, we determine that the Commission adhered to the standard as announced in *Herrmann*. Therefore, McNaughton's final argument must fail.

Accordingly, we affirm the Court of Common Pleas of Cumberland County.

## ORDER

AND NOW, this 18th day of November, 1994, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is affirmed.