### The BOROUGH OF EAST McKEESPORT, Appellant

### v.

### The SPECIAL/TEMPORARY CIVIL SERVICE COMMISSION OF the BOROUGH OF EAST McKEESPORT.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.

Decided Feb. 19, 2008.

---

5. Overruled in part on other grounds by *Awkakewakeyes v. Dep't of Corr.,* 142 Pa.Cmwlth. 232, 597 A.2d 210 (1991).

John F. Cambest, Pittsburgh, for appellant.

John J. Myers, White Oak, for appellee, East McKeesport Borough Special/Temporary Civil Service Commission.

Ronald P. Koerner, Pittsburgh, for appellee, Gary Martin.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Borough of East McKeesport appeals an order of the Court of Common Pleas of Allegheny County (trial court) that affirmed the decision of a Special Civil Service Commission to reinstate Captain Gary Martin to the Borough's police force. The Special Commission conducted its deliberations on Captain Martin's appeal of his employment termination in an open and public meeting, but it neglected to give the public a Sunshine Act [1] notice of its deliberations. The trial court declined to nullify the Special Commission's adjudication for failing to provide this notice. The principal issue we consider is whether the trial court abused its discretion in this regard.

Before his termination, Martin was an eleven-year veteran of the East McKeesport Police Department and, as Captain, the second highest ranking officer in the department. On May 7, 2003, Chief of Police Russell Stroschein directed Martin to deliver certain documents to the District Attorney's Office in Pittsburgh the following day during Martin's 8:00 a.m. to 4:00 p.m. shift. The next day, in preparation for his trip to Pittsburgh, Martin contacted the Eastern Regional Communications Center (ERC Center), the dispatch center for the Borough, and advised the ERC

Center that he would be leaving the Borough for Pittsburgh. He further requested that the police departments of North Versailles and Pitcairn be placed on standby to respond to calls in the Borough during his absence. Martin also contacted the Borough Council President, Donna Ferrainolo. He informed her that to avoid traffic he was leaving for Pittsburgh before his replacement arrived at noon but that the North Versailles and Pitcairn police departments would cover the Borough during the interim. [2]

Martin left for Pittsburgh at approximately 11:30 a.m., and he returned to the Borough thirty minutes later. Martin was absent from the Borough for about twenty minutes before Officer Bell, who was scheduled to work the noon shift, came on duty. In the meantime, at 11:45 a.m. the ERC Center received a low priority call regarding a traffic hazard. That call was routed to Officer Bell who reported that he was enroute to the call at 12:01 p.m.

On May 16, 2003, the Borough Mayor suspended Martin, asserting a violation of a department policy. This policy, which had been authored by the Borough's former Chief of Police, Richard S. Michaels, prohibits officers from leaving their post without first notifying the mayor, chief of police, or sergeant. It also states that the police chief would recommend immediate dismissal of any officer who violated the policy. On June 24, 2003, the Borough Council terminated Martin for violation of the policy and for conduct unbecoming of an officer. Martin appealed his termination to the Civil Service Commission (Commission).

Hearings were held before the Commission on August 21, 2003, and on November

---

1. 65 Pa.C.S. §§ 701–716.

2. The Borough Secretary had told Martin that Chief Stroschein usually waited for the noon officer to arrive before driving to Pittsburgh with documents needed by the District Attorney.

21, 2003. The Commission affirmed Martin's termination, and he appealed to the trial court. The trial court vacated the Commissioner's decision, concluding that Martin had been denied a fair hearing because one of the Commissioners, Charles Schleifer, the father of Council President Donna Ferrainolo, had failed to recuse himself. The trial court reasoned that because Ferrainolo had voted to dismiss Martin and had personally signed Martin's dismissal letter, it was improper for her father to review her decision. The trial court observed, however, that the factual findings of the Commission were supported by substantial evidence. By order of December 21, 2004, Martin's appeal was remanded for additional proceedings.

On May 13, 2005, the trial court issued an order clarifying its December 21, 2004, order. First, the trial court directed the Borough to empanel a new civil service commission. Second, the trial court directed the new commission to consider the original record and to give each party the opportunity to submit additional evidence.

A hearing was held before the "Special/Temporary Civil Service Commission" on January 25, 2006, at which additional evidence was presented. On March 15, 2006, the Special Commission deliberated and issued its decision, which reversed the Borough's dismissal of Martin and ordered his reinstatement with full pay effective May 16, 2003.

The Borough appealed, raising four issues with the trial court. They were: (1) whether the Special Commission failed to consider the record of the original Com-

mission's hearing; (2) whether the Special Commission had violated the Sunshine Act; (3) whether the factual findings in the Special Commission's decision were supported by substantial evidence; and (4) whether the trial court's conclusion in its first opinion that substantial evidence supported the Commission's factual findings was binding on the Special Commission as the law of the case.

The trial court denied the appeal. First, the trial court concluded that the Borough could not substantiate its claim that the Special Commission did not consider the record of the first proceeding. Next, the trial court explained that its prior decision that the Commission's factual findings were supported by substantial evidence was not the law of the case because the Special Commission had been ordered to make its own factual findings. Further, the trial court found the Special Commission's factual findings to be supported by substantial evidence. With respect to the Borough's Sunshine Act issue, the trial court agreed with the Borough that the Special Commission had failed to comply with the notice requirements of the Sunshine Act, at least with respect to its March 15, 2006, meeting. However, the trial court held that the infraction was not fatal but, rather, curable because the Special Commission could ratify its decision at a future public meeting. The trial court affirmed the Special Commission's reversal of the Borough's decision to terminate Martin, and the present appeal followed.

 Before this Court, the Borough raises three issues.[3] First, the Borough

---

**3.** This Court's scope of review of an adjudication of a municipal civil service commission is limited. *Moorehead v. Civil Service Commission of Allegheny County,* 769 A.2d 1233, 1237 (Pa.Cmwlth.2001). This Court must affirm the adjudication where a full and complete record is made unless it violates constitution-

al rights, is not in accordance with the law, it violates the procedural provisions of the local agency law, or the commission's findings are not supported by substantial evidence. *Id.* at 1238 (citations omitted). Although the Court may examine the evidence, it may not substitute its judgment for that of the commission.

argues that the Special Commission failed to consider the evidence presented in the original proceeding. Second, the Borough contends that the Special Commission's failure to give notice to the public of its deliberations violated the Sunshine Act, thereby nullifying its decision to reinstate Martin. Third, the Borough asserts that the Special Commission's factual findings were not supported by substantial evidence. We consider the issues *seriatim.*

The Borough argues, first, that the Special Commission failed to review and consider the evidence presented in the first proceeding before the Commission. The Borough asserts that the Special Commission made "absolutely no reference or citation to any portion of the transcript of the proceedings of August 21, 2003" in its adjudication. Appellant's Brief at 12. The record does not support the Borough's assertion.

Indeed, the introductory paragraph to the Special Commission's findings of fact belies the Borough's claim. That paragraph states as follows:

> The [Special Commission] ... *has received and considered the original record in this matter* as submitted to it by the parties hereto, *consisting of the transcript of the testimony of the hearing before the [original Commission]* held on August 21, 2003, and considered the evidence presented to the [Special Commission] at a hearing held before it on January 25, 2006, and, after due deliberation, hereby makes the following

Findings of Fact, Conclusions of Law and Decision.

Reproduced Record at 353 (R.R. at ——) (emphasis added). The transcript of the January 25, 2006, hearing shows that one of the Special Commissioners referred specifically to the transcript of the first hearing by page and by line. R.R. 392–393.

Many of the Special Commission's findings of fact do not cite to the transcript of either hearing. However, many of those factual findings were based on evidence only adduced at the August 21, 2003, hearing before the original Commission. For example, the Special Commission highlighted the testimony of former Chief Michaels, who did *not* testify at the remand proceeding before the Special Commission.[4] Chief Michaels testified that the policy on which the Borough based Martin's termination was never intended to cover Martin's situation; that Martin's conduct complied with the Department's standard practices; and that Martin had not "abandoned" his shift because he was doing police business when he drove into Pittsburgh.

In short, the Borough's argument that the Special Commission failed to consider the evidence adduced at the proceedings of the original Commission is rejected as directly contradicted by the record of the Special Commission's hearing and its adjudication.

Next, the Borough contends that the Special Commission violated the notice

---

*Id.* Indeed, the Court may not reweigh the evidence "since the commission, as fact finding tribunal, is in a better position to discover the facts based upon the testimony and the demeanor of witnesses." *Id.*

4. There are many other examples. *See, e.g,* Finding of Fact 14, R.R. at 42 (Martin was told by Chief Stroschein to deliver documents to Pittsburgh); Finding of Fact 17, R.R. at 132 (Martin advised the ERC Center he was

leaving the Borough and that the North Versailles and Pitcairn police departments should cover); Finding of Fact 19, R.R. at 67–68 (Martin informed the Council President of his intended trip); and Finding of Fact 21, R.R. at 68 (Martin chose to leave at 11:30 a.m. to avoid traffic). The evidence to support these factual findings was adduced at the proceedings before the original Commission.

provisions of the Sunshine Act, rendering its decision to reinstate Martin a nullity. Martin and the Special Commission respond that the Borough did not timely raise its Sunshine Act objection and that, in any case, the Sunshine Act infraction was not fatal. The notice problem could be easily rectified by the Special Commission ratifying its decision to reinstate Martin in another public meeting.

■ The Sunshine Act establishes a right in members of the public to attend all meetings of agencies at which any agency business is discussed or acted upon. 65 Pa.C.S. § 704.[5] To advance the exercise of this right, the Sunshine Act requires agencies to notify the public of their meetings. Section 709 requires the agency to

> give the notice in time to allow it to be published or circulated within the political subdivision where the principal office of the agency is located or the meeting will occur before the date of the specified meeting.

65 Pa.C.S. § 709(b). Where an agency has failed to provide the statutory notice, a challenge may be made but only if it is filed "within 30 days from the date of a meeting which is open, or within 30 days

from the discovery of any action that occurred at a meeting which was not open. . . ." 65 Pa.C.S. § 713.

Martin and the Special Commission contend that the Borough waived its Sunshine Act challenge.[6] They reason that the Borough knew that the January 25, 2006, and the March 15, 2006, meetings had not been advertised in accordance with the requirements of Section 709 of the Sunshine Act, but it did not object until after the Special Commission ruled in favor of Martin. The trial court agreed that the Borough did not timely challenge the lack of published notice of the January 25, 2006, hearing. However, it found that the Borough did object timely to the lack of notice of the March 15, 2006, deliberation, by filing an appeal on April 13, 2006.

■ The fact that the Borough waited to see how the Special Commission ruled does not, *per se*, make its objection untimely.[7] The question, then, is whether the lack of notice of its March 15, 2006, deliberations on Martin's appeal required the trial court to nullify the Special Commission's decision.

5. It states that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)." 65 Pa.C.S. § 704.

6. Notably, it is doubtful that the open meeting and public notice requirements of the Sunshine Act even applied to the proceedings of the Special Commission. Section 708(a)(1) of the Sunshine Act states that an agency may hold an executive session, closed to the public, to "discuss any matter involving the employment, appointment, termination of employment . . . or disciplining of a public officer or employee. . . ." 65 Pa.C.S. § 708(a)(1). At issue here were meetings re-

lated to the termination of Martin's employment, which can be closed to the public.

7. The Pennsylvania Supreme Court recently held in *Day v. Civil Service Commission of Borough of Carlisle*, 593 Pa. 448, 931 A.2d 646 (2007), that an officer's challenge under the Sunshine Act was untimely, even though it was filed within 30 days of the meeting in question. In *Day*, the issue was not public notice of the meeting but, rather, whether the meeting was required to be an open meeting. The Supreme Court held that the officer's Sunshine Act appeal was untimely because he did not file within 30 days of the commission's denial of his request that the meeting be conducted as an open meeting. Here the March 15, 2006, deliberations were open to the public; the only issue was advance notice of those deliberations.

Section 713 of the Sunshine Act authorizes the court to impose sanctions upon an agency that violates the Sunshine Act; it states, in relevant part, that

> should the court determine that the meeting did not meet the requirements of this chapter, *it may in its discretion* find that any or all official action taken at the meeting shall be invalid.

65 Pa.C.S. § 713 (emphasis added). A court's decision to invalidate an agency's action is discretionary, not obligatory, as contended by the Borough. Here, the trial court decided not to exercise its discretion in this way, explaining as follows:

> [T]he appropriate remedy is not to invalidate the entire proceeding and start from scratch (for what would be a third time). Rather, as appellate courts have noted, "short of fraud in reaching [a decision at a meeting], most any Sunshine Act infraction could [be] cured by subsequent ratification at a public meeting. Otherwise, governmental action in an area would be gridlocked with no possible way of being cured once a Sunshine Act violation was found to have occurred." *Lawrence County v. Brenner*, 135 Pa.Cmwlth. 619, 630, 582 A.2d 79, 84 (1990). There is no allegation of fraud here, and the more efficient and just remedy for any Sunshine Act violation would be to allow the [Special Commission] to ratify its decision at a public meeting for which proper notice is provided.

Trial Court Opinion dated January 30, 2007, at 6. The trial court did not abuse its discretion in declining to impose the sanction authorized by Section 713 of the Sunshine Act. We reach this conclusion for two reasons.

First, the Borough did not raise the issue of inadequate notice of the meeting of March 15, 2006, until it filed its appeal of the Special Commission's adjudication with the trial court. At that point, it was too late for the Special Commission to take corrective action because the Borough's appeal divested the Special Commission of jurisdiction. PA. R.A.P. 1701(a) states as follows:

> [A]fter an appeal is taken or review of a quasijudicial order is sought, the trial court or other governmental unit may no longer proceed further in the matter.

Accordingly, by reason of PA. R.A.P. 1701(a) the Special Commission was barred from convening a ratification meeting until after the Borough's appeal was decided.

Second, the Borough's standing to contest the notice of the Special Commission's deliberations is highly doubtful in light of the fact that the Borough had notice of the March 15, 2006, meeting of the Special Commission, and the Borough attended. The Sunshine Act does not confer a general power upon the Borough to exercise the Sunshine Act rights of its citizens. The Borough's complaint seems particularly inappropriate where, as here, it is directed at the Borough's own agency, *i.e.*, the Special Commission.

The Borough is not really interested in making sure that the Sunshine Act is obeyed. If so, it would have raised the notice issue while the matter was still pending with the Special Commission, as was the case in Lawrence County. Instead, the Borough used the Sunshine Act notice issue as a gambit to use in its appeal. Its only object is to set aside the adjudication of the Special Commission, if not on its merits, then on technical grounds.

The case comes down to whether the trial court was required to invalidate the adjudication of the Special Commission simply because the Special Commission did not give advance notice to the public of the

hearing on March 15, 2006. The trial court correctly drew on our precedent to hold where a violation of the Sunshine Act is one that is curable, it is appropriate for a trial court to exercise its discretion not to invalidate that agency's action. Further, we have not been able to locate a single case where a lack of notice, or a defective notice, has resulted in a decision to invalidate the agency's action under the Sunshine Act when the complaining party was present at the meeting in question. *See, e.g., Coder v. State Board of Chiropractic Examiners,* 79 Pa.Cmwlth. 567, 471 A.2d 563 (1984) (court refused to invalidate agency's grant of chiropractic license at a meeting for which public notice was not given where the challenging party was at the meeting and not prejudiced by the lack of notice). For these reasons, the trial court properly rejected the Board's request to invalidate the Special Commission's adjudication for lack of compliance with the notice requirements of the Sunshine Act.[8]

■ In its final issue, the Borough challenges several of the Special Commission's factual findings as not supported by substantial evidence.[9] We address each challenge *seriatim.*

The Borough's first challenge is to Finding of Fact 17, which states as follows:

17. Before leaving the Borough to make the delivery of the pre-trial documents to the District Attorney's Office in Pittsburgh, Captain Martin, as he had done many times before, contacted the Eastern Regional Communications Center ("ERC"), the normal dispatch for the Borough of East McKeesport, telling them that he was leaving the Borough and needed North Versailles and Pitcairn Police Departments on standby.

R.R. at 356. The Borough concedes that this finding is "factually correct as far as it goes," but it complains that it did not go on to state that what Martin did violated the Department's policy.

That the Special Commission did not accept the Borough's position does not mean Finding of Fact 17 is wrong. *See Allied Mechanical and Electrical, Inc. v. Pennsylvania Prevailing Wage Appeals Board,* 923 A.2d 1220, 1228 (Pa.Cmwlth. 2007) (citation omitted) ("presence of conflicting evidence in the record does not mean that substantial evidence is lacking"). The Special Commission decided, instead, to credit Chief Michaels' testimony that Martin did not violate the policy and that the policy was directed at different conduct, *i.e.,* abandonment of duty. Here, Martin was following the directive of his superior. We reject the Borough's argu-

---

8. Consistent with the law of many state jurisdictions, the Pennsylvania Supreme Court has held that under the Sunshine Act the deliberations of an agency acting in a quasi-judicial proceeding may be conducted in an executive session. *Kennedy v. Upper Milford Township Zoning Hearing Board,* 575 Pa. 105, 132, 834 A.2d 1104, 1121 (2003). In this respect, the rule is no different than that permitted to judges. *Id.*

9. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moorehead v. Civil Service Commission of Allegheny*

*County,* 769 A.2d 1233, 1238 (Pa.Cmwlth. 2001). "In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder" and "draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *3D Trucking Co., Inc. v. Workers' Compensation Appeal Board (Fine and Anthony Holdings International),* 921 A.2d 1281, 1288 (Pa.Cmwlth.2007) (internal quotation omitted).

ment that Finding of Fact 17 is not supported by substantial evidence or is incomplete.

The Borough next challenges Finding of Fact 18, which states:

18. *Captain Martin was satisfied* that with his call to [the ERC Center], East McKeesport Borough would have adequate and proper police protection in his absence since he had followed this same procedure during the tenure of both Chief Stroschein and his predecessor Chief Michaels.

R.R. at 356 (emphasis added). The Borough contends that this is not a factual finding but, rather, a conclusion of law that is irrelevant to the determination of whether Martin violated the policy. Again, we disagree.

Finding of Fact 18 states that Martin *subjectively* believed that the Borough had adequate protection in his absence and that he acted properly because this was the procedure he had followed under both Chief Michaels and Chief Stroschein. This finding is also supported by the testimony of former Chief Michaels that it was standard practice in the Police Department to do exactly what Martin did, and that former Chief Michaels in fact had done the very same thing on numerous occasions. This testimonial evidence was more than adequate to support Finding of Fact 18.

Next, the Borough contests Finding of Fact 19, finding that Martin notified the Council President before leaving for Pittsburgh, and Finding of Fact 21, finding that Martin left at 11:30 a.m. because he believed he would encounter lighter traffic. Again, the Borough does not really argue that these findings lack the support of

substantial evidence. The Borough's real argument seems to be that these findings demonstrate that the Special Commission ignored the transcript of the original Commission hearing on August 21, 2003, an issue already resolved against the Borough.

The Borough next challenges Finding of Fact 20, which states that "Captain Martin was absent from the Borough for less than 20 minutes before Officer Bell reported for duty on his noon to 8:00 p.m. shift." R.R. at 356. The Borough asserts that the evidence established that Martin was absent from the Borough for about thirty minutes. The two statements are not inconsistent. Officer Bell reported to work before Martin returned.

Finally, the Borough contests Findings of Fact 25 and 26, which state:

25. The Borough of East McKeesport was not left unprotected when Captain Martin traveled to and from Pittsburgh on May 8, 2003. His call to [the ERC Center] assured the Borough of continuing protection.

26. Captain Martin did not leave his shift as stated in the Memorandum of August 11, 2005 [the policy at issue]. He left the Borough of East McKeesport in the performance of police department business by performing a task he had been instructed to do.

R.R. at 357. The Borough asserts that these findings are conclusions of law and are not supported by the "credible" evidence. The Borough is wrong and, in any case, the record supports each finding.[10] Martin's testimony, which was credited, established that contacting the ERC Cen-

10. The statements are entirely factual. The Borough objects to the Special Commission's inferences, such as the statement that the Borough was "not unprotected." Fact finders draw inferences.

ter was the procedure to be followed to make sure that the Borough had police protection during the absences of its officers. Former Chief Michaels' testimony, also credited, established that the policy was drafted in response to a situation where an officer abandoned his shift without notifying anyone to embark on a personal errand.

In sum, the Borough's substantial evidence arguments lack any merit. The Borough's real problem is that the Special Commission did not accept the Borough's version of events, and that it resolved conflicts in favor of Martin. We may not, however, substitute our judgment for that of the factfinder. *K.J. v. Pennsylvania Department of Public Welfare,* 767 A.2d 609, 613 (Pa.Cmwlth.2001) (citation omitted) ("[w]eight and credibility of evidence are matters solely within the province of the fact finder").[11]

For all of the foregoing reasons, we affirm the order of the trial court.

## ORDER

AND NOW, this 19th day of February, 2008, the order of the Court of Common Pleas of Allegheny County dated January 30, 2007, in the above captioned matter is hereby AFFIRMED.

**11.** The Borough contends that under *Herrmann v. Civil Service Commission of Borough of Jenkintown,* 84 Pa.Cmwlth. 211, 478 A.2d 961 (1984) and *McNaughton v. Civil Service Commission of Borough of Camp Hill,* 168 Pa.Cmwlth. 395, 650 A.2d 1157 (Pa.Cmwlth. 1994), the Special Commission could not modify Martin's termination because the Borough's charges against him were supported by the evidence. However, the Special Commission held that the charges were improper, and acted in accordance with the evidence in this holding. *Herrmann* and *McNaughton* are beside the point.