IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew B. Baillie,             :
           Petitioner         :
                              :
          v.             :  No. 1 C.D. 2016
                              :  Submitted:  June 17, 2016
State Civil Service Commission  :
(Pennsylvania Department of     :
Transportation),              :
           Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: August 26, 2016

Matthew B. Baillie, *pro se*, petitions for review of an adjudication of the State Civil Service Commission (Commission) sustaining the three-day suspension imposed by his employer, the Pennsylvania Department of Transportation (Appointing Authority). The Commission found that Baillie violated a specific directive issued by his supervisor to seek assistance, when necessary, from her and not from his prior supervisor. Baillie contends he merely responded to a request of his prior supervisor and in finding to the contrary, the Commission misconstrued the evidence. Accordingly, it erred in holding that the Appointing Authority met its burden of proof. Discerning no merit to these claims, we affirm.

Baillie worked as a supervisor in the Appointing Authority's materials management help desk. On October 10, 2014, his supervisor, Amanda Weaver, issued the following written direct order to him:

This is a direct order that you are not to contact Bill Gipe for assistance unless otherwise instructed by your direct supervisor or someone in your direct chain of command. Any and all questions, comments, concerns, and/or issues should be directed to me or someone else in your chain via standard chain of command procedures. Your failure to follow this order may result in discipline, up to and including dismissal. Do you understand?

Supplemental Reproduced Record at 157b (S.R.R. __).[1] On November 17, 2014, Baillie was suspended without pay for three days for violating this direct order. The notice of suspension advised Baillie that it was a final warning and any future violation would result in termination. Pursuant to the Civil Service Act,[2] Baillie appealed to the Commission.

At the April 2, 2015, hearing on Baillie's appeal, the Appointing Authority presented the testimony of Weaver. She explained that prior to July 2014, William Gipe was Baillie's immediate supervisor. On July 7, 2014, Barry Williams, the division chief, announced that Gipe would be on special assignment for six months and that Weaver would be the acting management analyst manager through January 31, 2015. As acting manager, Weaver was appointed Baillie's immediate supervisor. She reported to Barry Williams, who reported to Diane Chamberlain, the director.

When Weaver assumed her new duties as acting manager, she informed the unit, including Baillie, that Gipe would not be available and that all questions should be directed to her. Nevertheless, on at least five occasions Baillie contacted Gipe, not her. When she learned of this, Weaver reminded Baillie that

---

[1] We cite to the supplemental reproduced record submitted by the Appointing Authority because the pages of the reproduced record submitted by Baillie are not numbered.

[2] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§741.1 – 741.1005.

questions should be directed to her, not Gipe. When Baillie continued to direct questions to Gipe, she issued the above-referenced written order, which she hand-delivered to Baillie on October 10, 2014. They both signed and dated it. Baillie did not ask any questions.

On October 23, 2014, Gipe informed her that Baillie had contacted him the day before to discuss "a question about the material numbers within that publication that needed to be revised in some manner." Notes of Testimony (N.T.), April 2, 2015, at 31; S.R.R. 31b. Although Weaver had been in the office on October 22, 2014, Baillie did not address the question to her or request permission to speak to Gipe. If Baillie had been unable to reach her, Weaver testified that he should have contacted a person in his immediate chain of command, *i.e.*, Williams or Chamberlain.

Believing Baillie's contact with Gipe violated her direct order, Weaver contacted Sara Landrigan, a human resource analyst. Baillie was issued a pre-disciplinary conference notice, and at that conference Baillie admitted that he received the direct order and, nonetheless, spoke with Gipe on October 22, 2014.

Gipe testified next. As of the date of the hearing, he supervised both Weaver and Baillie. During the time period relevant to Baillie's appeal, Gipe explained that he was on special assignment and not in Baillie's chain of command. That chain of command consisted of Weaver followed by Williams and Chamberlain. Gipe testified that Baillie telephoned him on October 22, 2014, about "a catalog used for purchasers or requesters to obtain publications and the material number was still appearing in that catalog. And he wanted to know why it was still appearing in the catalog." N.T., 4/2/2015, at 54; S.R.R. 54b. By e-mail,

3

Gipe responded to Baillie's question and stated that further questions should be directed to Weaver. He copied Weaver on the e-mail.

On cross-examination, Baillie asked Gipe about the conversation of October 22, 2014. Gipe stated that when Baillie telephoned him on October 22, 2014,

> we reached out to IES [Integrated Enterprise System]. Jennifer Duvall is an employee of IES. Subsequently from that phone message, she contacted me.

N.T., 4/2/2015, at 59; S.R.R. 59b. Duvall left a voicemail with Gipe. On October 27, 2014, Gipe sent Baillie an e-mail about Duvall's explanation of the catalog problem as follows:

> [T]he Plant Specific Material status field in the Material Master triggers whether a material will appear in the SRM catalog. "03" triggers inclusion. A nightly batch program picks up the materials that have this designation and adds them to the catalog and similarly removes others that no longer have it. She admitted that there are times when the batch program fails but indicated she has checked it and it has been running without problems.

*Id.* at 164; S.R.R. 164b.

Sara Landrigan, of human resources, also testified for Employer. She participated in the decision to have Weaver issue a written direct order to Baillie about his contacts with Gipe. After Weaver reported Baillie's violation of the order, Landrigan investigated and held a pre-disciplinary conference with Baillie. He acknowledged the direct order but stated that he did not recall telephoning Gipe. After Landrigan showed him Gipe's October 27, 2014, e-mail, he acknowledged calling Gipe. The next day, however, Baillie contacted Landrigan

4

and told her that he telephoned Gipe on October 24, 2014, when both Weaver and Williams were out of the office.

Landrigan held a second conference with Baillie. She asked Baillie if he was able to contact Weaver and Williams when they were out of the office. He stated that he could have called them on their cellphones. After the second conference, Landrigan determined that Baillie telephoned Gipe on October 22, 2014, not two days later as he now claimed. She also concluded that the date of the call was irrelevant because Baillie could have called Weaver and Williams on their cellphones.

After the Appointing Authority rested, Baillie called Gipe back to the stand and asked him about an e-mail of October 10, 2014. On that date, Gipe had sent Baillie an e-mail requesting they discuss the "Material Status on P[enn]DOT Items." S.R.R. 179b. Weaver and Williams were copied on this e-mail. As to what needed to be discussed, Gipe attached an e-mail from Tarasa Hill to several other employees, not Baillie, stating that Gipe should be able to provide information on "the use of P2 for PennDOT." S.R.R. 179b. Also attached was an e-mail from Duval requesting assistance because "[w]arehouse catalog 7869 has way too many items showing that are not Forms and Pubs because the materials have a 'P2' status and are not designated as '02' for non-catalog extraction." S.R.R. 180b. Neither Baillie nor Gipe were original recipients of this e-mail.

Baillie asked Gipe if Baillie's call to him on October 22, 2014, could have been in response to this October 10, 2014, e-mail. Gipe agreed that both e-mails involved a catalog, but Gipe also stated that "I can't recall whether it's the same issue or not." N.T., 4/2/2015, at 118; S.R.R. 118b.

5

Baillie was sworn-in and given an opportunity to present testimony. *Id.* at 123; S.R.R. 123b. He did not offer a narrative about the matters that led to his suspension. Rather, he testified only as necessary to have his exhibits admitted into evidence.

The Commission upheld Baillie's suspension because Baillie telephoned Gipe with a work question in violation of the written order. It rejected Baillie's claim that his call of October 22, 2014, responded to Gipe's e-mail of October 10, 2014, for the stated reason that the various e-mails addressed unrelated topics and contained different contact names.

Baillie petitioned for this Court's review and raises four issues.[3] First, he argues that the Commission's factual findings are inaccurate. Second, he argues that the Commission incorrectly found that the October 10, 2014, e-mail did not prompt Baillie's call to Gipe on October 22, 2014. Third, he argues that the Commission did not adjudicate with impartiality. Fourth, he contends that the Commission erred in holding that the Appointing Authority met its burden of proof.

We begin with a review of the applicable law. Section 803 of the Civil Service Act states that a civil service employee may be suspended from employment for "good cause." 71 P.S. §741.803.[4] The Commission's regulation states that "good cause for suspension" includes the following:

---

[3] Our scope of review considers whether the findings of fact are supported by competent evidence, whether errors of law were committed or whether constitutional rights were violated. *Ellerbee-Pryer v. State Civil Service Commission*, 803 A.2d 249, 253 n. 1 (Pa. Cmwlth. 2002). Our standard of review is deferential on factual findings and is *de novo* on matters of law. *Pinto v. State Civil Service Commission*, 912 A.2d 787, 793 (Pa. 2006).

[4] Section 803 provides:

**(Footnote continued on the next page . . .)**

6

(1) Insubordination.

(2) Habitual lateness in reporting for work.

(3) Misconduct amounting to violation of law, rule or lawful and reasonable Departmental orders.

(4) Intoxication while on duty.

(5) Conduct either on or off duty which may bring the service of the Commonwealth into disrepute.

(6) Similar substantial reasons.

4 Pa. Code §101.21(a). In a suspension, the appointing authority has the "burden of establishing that the employee was suspended for good cause." *Hargrove v. Pennsylvania State Civil Service Commission*, 851 A.2d 257, 260 (Pa. Cmwlth. 2004).

In a hearing, "the Commission is the sole fact-finder." *Perry v. State Civil Service Commission (Department of Labor and Industry)*, 38 A.3d 942, 948 (Pa. Cmwlth. 2011). As such, the Commission is the exclusive arbiter of witness credibility and conflicts in the evidence. This Court "will not reweigh the evidence

---

**(continued . . .)**

An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Suspensions, including suspensions pending internal investigation, shall not exceed sixty working days in one calendar year; however, suspensions pending investigation by external agencies may be maintained up to thirty working days after conclusion of the external investigation. No person shall be suspended because of race, gender, religion or political, partisan or labor union affiliation. What shall constitute good cause for suspension may be stated in the rules. An appointing authority shall forthwith report to the director in writing every suspension, together with the reason or reasons therefor, and shall send a copy of such report to the suspended employe. Such report shall be made a part of the commission's public records.

71 P.S. §741.803.

or substitute our judgment even though we might have reached a different factual conclusion." *Id.* We review the Commission's decision in the light most favorable to the prevailing party. *Id.*

In his first issue, Baillie asserts that Findings of Fact Nos. 12 and 13 are inaccurate and No. 17 is irrelevant. The relevant findings follow:

> 12. On October 10, 2014, Weaver issued [Baillie] a written directive stating he was not to contact Gipe for work related issues unless otherwise instructed by an employee within his chain of command. He was advised that failure to follow the directive could result in discipline "up to and including dismissal."

> 13. On October 22, 2014, [Baillie] directly contacted Gipe to discuss a work related issue. Nobody in [Baillie's] chain of command had directed [him] to contact Gipe.

> \*\*\*

> 17. After the [Pre-Disciplinary Conference, Baillie] provided additional information.

> 18. On November 7, 2014, [Baillie] attended a second [Pre-Disciplinary Conference].

Commission Findings of Fact Nos. 12, 13, 17 and 18. S.R.R. 168b-69b (internal citations omitted).

Baillie argues that Finding No. 12 mischaracterizes Weaver's written order because it did not contain the language "work-related issues." S.R.R. 168b. The Appointing Authority counters that the Commission's characterization of the direct order does not impact the question of whether Baillie violated this order. In any case, it argues that the written order that Baillie not contact Gipe "for assistance" implicitly referred to "work-related issues." We agree.

8

The Commission did not mischaracterize the scope of the direct order in Finding of Fact No.12. The direction not to contact Gipe for assistance without permission logically referred to a work matter. It is, in any case, not relevant to the Commission's adjudication.

Baillie challenges Finding No. 13 because it does not detail his claim that his telephone call to Gipe responded to Gipe's earlier e-mail to him. The Appointing Authority responds that the omission was intentional because the Commission did not accept Baillie's version of what prompted his call to Gipe, as was its prerogative. In support it cites *Borough of East McKeesport v. Special/Temporary Civil Service Commission of the Borough of East McKeesport*, 942 A.2d 274, 283 (Pa. Cmwlth. 2008) (holding that the Commission, as factfinder, resolves conflicts in the evidence).

Here, the Commission fully addressed, and rejected, Baillie's claim that his contact to Gipe on October 22, 2014, was only in response to Gipe's earlier e-mail. Gipe testified that he was unsure if the e-mails involved the issue on which Baillie called him, and Baillie did not testify on the content of the e-mails. Baillee did not correlate them to his call to Gipe on October 22, 2014. We reject Baillie's claim that Finding No. 13 is inaccurate.

On Finding No. 17, Baillie argues that there were two pre-disciplinary conferences, and he only provided additional information after the second one. He contends that the placement of Finding No. 17 before Finding No. 18, which refers to the second pre-disciplinary conference, implies his evidence was submitted after the first conference. However, the only information Baillie submitted after the first conference was a "lengthy written response" to Landrigan. Baillie Brief at 25.

9

Whether Baillie submitted additional evidence after the first or second conference has no impact on the essential question, which is whether he violated a direct order. Moreover, Landrigan testified that after the first conference Baillie submitted information asserting that Weaver and Williams were not in the office on October 24, 2014, which necessitated his call to Gipe. N.T., 4/2/2015, at 76; S.R.R. 76b. This new claim prompted her to schedule a second conference. Landrigan's testimony fully supports Finding No. 17, and we reject Baillie's challenge to it.

In his second issue, Baillie argues that the Commission erred in concluding the October 10, 2014, e-mail was not related to his October 22, 2014, telephone call to Gipe. Baillie argues the Commission may not have been able to follow the complexities of the case. Its finding that the e-mails were unrelated is unsupported by the evidence. The Appointing Authority responds that Baillie presented no evidence to explain how the e-mails were related to his phone call to Gipe. The e-mails have different subject lines, have different content and were sent to different recipients.

In making this argument, Baillie does not address the specific content of the two e-mails or explain, using the actual language in the e-mails, how the e-mails are connected to his later call to Gipe. Instead, Baillie states that in the months leading to the October call there "had been additional automation of the data loads for new material set up and for maintenance of existing data." Baillie Brief at 26-27. Further, Gipe and Duvall did not understand the full impact of the changes, which resulted in corruption of the existing data. "Although it can't be known for certain, it is likely that [Gipe] and [Duvall] had become aware of a data problem which was the impetus for [Gipe's] email of October 10, 2014." Baillie

10

Brief at 27. There is no record evidence to support this narrative. Pointedly, Baillie declined to testify, which was his opportunity to make this narrative part of the record evidence.

There is no reason to infer that the Commission did not understand Baillie's argument. The Commission specifically noted Baillie's contention "that his contact with Gipe was in response to an October 10, 2014 email chain." Commission Adjudication at 9; S.R.R. 173b. It rejected Baillie's contention by reading the e-mails, which "refer to completely unrelated topics, do not contain the same contact names, and do not include the same information." *Id.* at 10; S.R.R. 174b. We reject Baillie's second claim of error.

In his third issue, Baillie argues that the Commission suppressed his efforts to introduce relevant evidence. Baillie questioned Weaver on her training and experience, eliciting testimony that she had not taken a required management training course and had no experience supervising employees of Baillie's pay grade. The Appointing Authority objected to his line of questioning on grounds of relevancy, and the Commission sustained the objection. Baillie argues Weaver's competency was relevant to whether he was suspended for good cause. The Appointing Authority responds that Weaver was Baillie's supervisor, and even if Baillie believed Weaver to be incompetent, he was required to follow all reasonable orders. We agree. The Commission did not err in sustaining the Appointing Authority's relevancy objection. The only issue was whether Baillie violated a direct order, not Weaver's qualifications.[5]

---

[5] As an aside, Baillie could have challenged Weaver's directive as unreasonable, but he did not do so. In any case, Weaver did not issue this order unilaterally but only after consulting with Landrigan and Chamberlain. N.T., 4/2/2015, at 69; R.R. 69b. Landrigan assisted in drafting the order. This evidence supports the reasonableness of the order.

11

In his final issue, Baillie argues that the Commission erred in concluding that his suspension was for good cause. In this regard, Baillie reiterates his first argument, *i.e.*, that the Commission expanded the scope of the direct order. Further, because the Commission did not address his argument about the October 10, 2014, e-mail until the very end of its adjudication, this shows bias. We have already addressed, and rejected, his contention about the "scope" of the direct order. The order in which the Commission addressed his claims in its adjudication is irrelevant and does not support an inference of bias. We reject this contention.

For all the above-stated reasons, we affirm the Commission's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Matthew B. Baillie, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1 C.D. 2016 |
| | : | |
| State Civil Service Commission | : | |
| (Pennsylvania Department of | : | |
| Transportation), | : | |
| Respondent | : | |

## **O R D E R**

AND NOW, this 26th day of August, 2016, the order of the State Civil Service Commission, dated December 2, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge